UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CIVIL ACTION NO. 04-570-C**

**METROPOLITAN LIFE INSURANCE COMPANY,**            **PLAINTIFF,**

**V.**        **MEMORANDUM OPINION AND ORDER**

**RUSSELL D. CONGER,**            **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the plaintiff's motion for judgment on the administrative record (DE 19). The court, having reviewed the record and being otherwise sufficiently advised, will grant the plaintiff's motion.

**Background**

The plaintiff, Metropolitan Life Insurance Company ("MetLife"), is responsible for administering benefits offered under the Federal Long Term Care Insurance Program ("FLTCIP"), an insurance program established pursuant to the Long Term Care Security Act, 5 U.S.C. §§ 9001, *et seq.*, for the benefit of federal employees. The defendant, Russell D. Conger, applied for and received coverage under the FLTCIP. The application for coverage asked:

> Within the last 10 years have you had, been diagnosed with, or been treated for . . . . Disorder of the Brain (e.g. tremor, seizure disorder, head injury, tumor, infection), Neuropathy, Syncope, Paralysis, any Chronic or Progressive Neurological Disorder[?]

Mr. Conger answered in the negative. ML 0004.

Approximately one year after coverage commenced, Mr. Conger submitted a

claim for benefits based on problems with balance and mobility. In the course of processing Mr. Conger's claim, MetLife performed a review of his medical history. MetLife's review revealed that Mr. Conger's balance and mobility problems had existed and been progressing for nearly 15 years.

Although Mr. Conger had sought the advice of several doctors, none had determined the cause of his unsteadiness. In fact, his examinations had produced normal MRI scans, EKGs, and muscular biopsies, and had ruled out sinus problems, cerebral abnormalities, muscular dystrophy, inherited degenerative disease, and multiple sclerosis as the origin of his symptoms. *See* ML0013; ML0014; ML0015; ML0017; ML0020; ML0023; ML0028; ML0030.

Mr. Conger's medical records characterize his medical problems in terms of ataxia, "a syndrome with spastic paraparesis," and "nonspecific coordination dysfunction and corticospinal tract dysfunction." *See* ML0020; ML 0028. His doctors speculated that he may have had "some mild cognitive impairment," abnormality in the brain and lower thoracic spine, or an acquired degenerative brain disease, but continued to order additional testing because of their uncertainty. *See* ML0020; ML0029.

The insurance policy authorized MetLife to deny or rescind coverage "if your answers are incorrect or untrue for any reason." ML0063. MetLife also reserved the right to contest an insured's eligibility between six months and two years after commencement of benefits if the claimant made a "misrepresentation that is relevant to the condition . . . for which benefits are sought." ML 0093; *see also* 5

2

C.F.R. § 875.408(a)(2). The policy defined misrepresentation as "a statement or omission of information Material To Your Insurability that occurred with or without your knowledge of the facts as shown in your medical records." ML0102. If MetLife "would not have issued your coverage had the facts, as shown in your medical records, been disclosed to us before your original Effective Date," then those facts are considered material to insurability. *Id*.

Based on its review of Mr. Conger's medical history, MetLife concluded that his representation that he had neither had, been diagnosed with, nor been treated for any progressive neurological disorder in the previous ten years was an incorrect response that justified rescission of his benefits. MetLife notified Mr. Conger of its decision to rescind his coverage on September 25, 2003. Mr. Conger requested a review of that decision on September 29, 2003, which was unsuccessful.

**Standard of Review**

Review of an eligibility determination under the FLTCIP is limited by the applicable master contract. 5 U.S.C. § 9003(c)(2). Under the terms of the insurance policy, MetLife has discretion to interpret the "terms, conditions and provisions" of the plan. ML0094.

MetLife argues that this court should review its decision to rescind Mr. Conger's coverage under the "arbitrary and capricious" or "abuse of discretion" standard because the cost-saving and efficiency goals associated with the FLTCIP are similar to those advanced by the Employee Retirement Income Security Act ("ERISA") and because MetLife has discretion with regard to interpreting the policy.

3

A court will affirm an administrative decision under the "arbitrary and capricious" standard if it is possible to give a reasoned explanation for that decision based on the evidence. *Davis v. Kentucky Fin.*, 887 F.2d 689, 693 (6th Cir. 1989). Under the "abuse of discretion" standard, the court will not disturb the decision below unless it relied on clearly erroneous findings of fact, improperly applied the law, or used an erroneous legal standard. *Christian Schmidt Brewing Co. v. G. Heileman*, 753 F.2d 1354, 1356 (6th Cir. 1985).

Decisions by plan administrators under ERISA are reviewed *de novo*; however, where the insurance policy grants the administrator discretion, review is for abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 114 (1989). The Supreme Court based its decision in *Firestone* on the competing desires to protect insured employees and to enhance efficiency and cost-effectiveness. *Id.*

Mr. Conger argues that the deferential "abuse of discretion" standard is unwarranted in the context of the FLTCIP, because ERISA's concern for protecting employers who provide health insurance to their employees is absent. Mr. Conger further asserts that non-ERISA cases in which courts have applied the "abuse of discretion" standard have involved eligibility determinations, as differentiated from a determination of whether an application contains a material misrepresentation.

The effect of a misrepresentation in an insurance application is governed by contract law. *Davies v. Centennial Life Ins. Co.*, 28 F.3d 934, 943 (6th Cir. 1997). The court therefore agrees with MetLife that the decision to rescind benefits under

4

the FLTCIP where the insurance contract bestows discretion on the insurer to interpret the provisions of the plan is reviewed for an abuse of that discretion. MetLife's conclusion that Mr. Conger completed his application incorrectly is effectively the equivalent of a decision to rescind, and the court reviews that decision for an abuse of discretion based on the administrative record.

**Legal Analysis**

Mr. Conger did not volunteer information regarding his medical history that would have resulted in denial of benefits had MetLife been aware of it. The omitted information is also clearly relevant to the condition for which Mr. Conger sought payment of benefits. However, it is not clear that Mr. Conger's response to the question in his application regarding progressive neurological disorders was incorrect, because the question was limited to whether he had, was diagnosed with, or was treated for such a disorder.

Although MetLife relied on the ground of incorrectness to rescind Mr. Conger's benefits, the policy also permitted cancellation on the basis of a misrepresentation related to a condition for which benefits are claimed. Therefore, even if the response was truthful, rescission could also be appropriate if Mr. Conger's symptoms and course of treatment should have been disclosed in his application.

The traditional rule that an insured has an absolute duty to disclose facts which affect the risk to the insurer is relaxed where an applicant is required to answer questions about his health. *Stipcich v. Metrop. Life Ins. Co.*, 277 U.S.

5

311, 316 (1928). Information which an insurer does not request is presumed to be immaterial. *Id.* However, if "a person of average intelligence and experience would have known" that certain information clearly indicates the existence of a condition about which the questionnaire asks, a contrary response will be considered false. *Provident Life & Accident Ins. Co. v. Sharpless*, 253 F. Supp. 2d 874, 885 (M.D. La. 2003).

Because the insurance application did not ask generally about medical problems or symptoms, the court's analysis begins from the presumption that the information regarding Mr. Conger's symptoms is not material. Therefore, in order to prevail, MetLife must either (a) establish that Mr. Conger had, was diagnosed with, or had been treated for a progressive neurological disorder or (b) rebut the presumption of immateriality.

### A. Incorrect or Untrue Response

The court finds that Mr. Conger did not have, was not diagnosed with, and never received treatment for a progressive neurological disorder, and that the negative response in his application was therefore neither incorrect nor untrue in any way. All of the evidence reflects that, although Mr. Conger's doctors had suspicions as to the cause of his health problems, they had been unable to ascertain the precise etiology. Mr. Conger's doctors admitted that the cause of his imbalance was unclear, and their uncertainty continued even after benefits had commenced. The fact that his doctors continued to prescribe a variety of testing, not limited to neurological factors, is convincing evidence that Mr. Conger was

neither diagnosed with nor treated for a neurological disorder, which is the subject of the application's question.

The court also finds that the administrative record does not support a conclusion that Mr. Conger had a progressive neurological disorder. MetLife is correct in its assertion that rescission is justified if Mr. Conger's response was incorrect, even if he did not knowingly provide a false answer. That is, if the evidence shows that Mr. Conger in fact *had* a progressive neurological disorder, his negative response would justify rescission regardless of the fact that he had not been diagnosed with or treated for it and therefore was unaware of its existence. The record does not show, however, that Mr. Conger in fact had a progressive neurological disorder.

Mr. Conger's doctors verified that he suffered from ataxia. Ataxia is defined as "an inability to coordinate muscle activity during voluntary movement; most often due to disorders of the cerebellum or the posterior columns of the spinal cord. . . ." Stedmann's Medical Dictionary (Lippincott Williams & Wilkins 27th ed.). While ataxia is consistent with and typically indicative of brain disorder, its presence is not conclusive. Particularly given Mr. Conger's normal MRIs and his doctors' inability to pinpoint the cause of his lack of coordination, his ataxia is insufficient to support a finding that he in fact had a neurological disorder.

Mr. Conger was also characterized as having a syndrome. A syndrome is "the aggregate of symptoms and signs associated with any morbid process, and constituting together the picture of the disease." *Id.* The fact that a patient suffers

from a syndrome does not necessarily equate to the existence of a particular disorder or disease. Mr. Conger's doctors, aware of his multiple symptoms and of his consistently normal test results, were unable to formulate a conclusion based on his syndrome, and the record does not support such a definitive result.

Furthermore, not only does the record not support a finding that Mr. Conger had, was diagnosed with, or was treated for a progressive neurological disorder, but it also shows that MetLife did not affirmatively claim that he did. MetLife based its denial of Mr. Conger's appeal on "symptoms and findings that are consistent with the presence and history of a progressive neurological disorder." ML0172. One reviewing doctor was of the opinion that Mr. Conger in fact suffered from a progressive neurological disorder. ML0057. However, the record shows even more examples of MetLife's inability to positively determine that Mr. Conger was afflicted with such a disease. *See* ML0058; ML0060. Therefore, because there is no basis on the record for MetLife's determination that Mr. Conger completed his application for insurance incorrectly, MetLife abused its discretion in rescinding Mr. Conger's benefits on that basis.

### B. Material Misrepresentation

Although the court finds an abuse of discretion in MetLife's conclusion that Mr. Conger answered the question regarding progressive neurological disorders incorrectly, the court nonetheless finds that the rescission itself was not an abuse of discretion because an alternative legitimate justification exists. The parties did not address whether an omission of information could form the basis for rescission,

but the court finds sufficient development on the record and in the parties' briefs to adequately answer the question. Even though Mr. Conger's response on his application was not incorrect, the contract authorized rescission for omission of material information related to a condition for which benefits are claimed. Because the omitted information was not specifically requested in the application, it is presumed immaterial. *Stipcich*, 277 U.S. at 316. The court finds that the evidence on the record is sufficient to rebut this presumption.

The insurance contract defines "materiality" with respect to the effect information would have had on the decision to grant coverage on the applicant if the information had been disclosed. The record reflects that MetLife would have declined Mr. Conger's application if it had been aware of his symptoms and history. ML0048; ML0058. Under the policy, a misrepresentation can take the form of either a statement or an omission.

Despite the absence of a precise diagnosis, both Mr. Conger and a person of average intelligence would have known that his symptoms and overall health condition would affect the risk undertaken by a long-term care insurance provider. Mr. Conger was aware of the duration and progressive worsening of his condition. ML0010. He was also aware of his family history of neurological and neuromuscular disease. ML0031. MetLife could and should have included questions pertaining to all material information – for example, the applicant's medical history. Nonetheless, based on the language of the contract between the parties, its failure to do so does not preclude rescission based on its later discovery

9

of undisclosed and unrequested information, even where the omission was in good faith, so long as the information is material and relates to the condition for which benefits are claimed.[1]

Therefore, MetLife's decision to cancel Mr. Conger's long-term care insurance coverage under the FLTCIP was justified under the plan's provision and federal regulations allowing rescission for material misrepresentations that are relevant to the condition for which benefits are sought.  Accordingly,

**IT IS ORDERED** that the plaintiff's motion for judgment on the pleadings (DE 19) is **GRANTED**.

Signed on  October 12, 2005

*Jennifer B. Coffman*

**Jennifer B. Coffman, Judge**
**United States District Court**

---

[1] Pursuant to the language of the policy, if Mr. Conger's request for benefits had been made more than two years after his coverage commenced, MetLife would have had to prove that the misrepresentation was made knowingly and intelligently. ML 0093; *see also* 5 C.F.R. § 875.408(a)(2).